MONAD ENGINEERING COMPANY, a corporation existing under the laws of the State of New York. *vs.* HAMILTON STEWART, trading as STEWART AND DONOHUE.

1. CONTRACTS—VALIDITY—FRAUD.

Fraud, avoiding a contract, must relate to something material. The contract must have been induced by it, and the confidence and belief induced must have been a reasonable one.

2. SALES—BREACH OF CONTRACT BY VENDOR—FRAUD OF PURCHASER—MISREPRESENTATIONS.

Defendants having contracted to sell stone to plaintiff, plaintiff's false statements as to the work for which the stone was to be used did not constitute fraud affecting the contract.

3. SALES—FRAUD BY PURCHASER—MISREPRESENTATION AS TO CREDIT.

A purchaser's statement that it had paid for all materials for a particular contract within 30 days of delivery did not alone, if false, affect the substance of the contract, in the absence of evidence that the purchaser's credit was bad or that the seller might rely on a builder's lien.

4. FRAUD—PRESUMPTIONS AND BURDEN OF PROOF.

Fraud is never presumed, and the burden of proof is on the party alleging it.

5. FRAUD—QUESTIONS FOR THE JURY.

Whether there is any evidence of fraud, or facts from which the jury may reasonably infer fraud, is, in most cases, for the court.

6. SALES—BREACH OF CONTRACT—DAMAGE TO PURCHASER—MEASURE.

The measure of damages for the seller's failure to furnish goods sold was the difference between the contract price and the market value of the goods at the time and place of delivery, with necessary expenses; and it was the purchaser's duty, in purchasing other goods, to purchase at the lowest price possible at a place where it could be delivered at least expense.

7. SALES—FAILURE TO DELIVER—DAMAGES.

. If a seller of stone knew it was not to be used at the point where he was to deliver it, but was to be loaded on scows, on failure to deliver, necessitating purchase elsewhere, the purchaser would be entitled to recover any increase in cost of such loading and the expenses necessarily incurred in connection therewith.

(December 22, 1910.)

Judges BOYCE and HASTINGS sitting.

*William S. Hilles* for plaintiff.

*John F. Neary* (of *Ward, Gray* and *Neary*) for defendant.

Superior Court, New Castle County, November Term, 1910.

ACTION OF ASSUMPSIT (No. 59, January Term, 1908), to recover damages for breach of a contract for the delivery to the plaintiff of certain stone called riprap. Judgment for plaintiff and defendant brings error. (See 3 *Boyce*—).

The facts and contentions of the parties appear in the charge of the court to the jury.

HASTINGS, J., charging the jury:

Gentlemen of the jury:—This is an action by the Monad Engineering Company, a corporation, and the plaintiff, against Hamilton Stewart, trading as Stewart & Donohue, the defendant, to recover damages for breach of contract. It is admitted in this case that a contract was entered into between the plaintiff and defendant, and that said contract is in the following words and figures, to wit:

*Plaintiff's Exhibit No. 4.*

"Address all communications to Stewart & Donohue, Office and
    Quarries, Augustine near Wilmington.

"Wilmington, Delaware, December 13, 1907.

"The Monad Engineering Co., 147 Cedar Street, New York City,
    N Y.

"Gentlemen: Confirming prices given your Mr. A. T. Prescott on riprap, would say that we will furnish and deliver in carload lots f. o. b. cars B. St. wharf, Wilmington, Del., in pieces ranging in weight from 150 to 250 lbs. each for the sum of one ($1.00) dollar per ton of 2,000 lbs., subject to railroad weights, delivery to be made as follows: Three cars per day subject to the weather. Terms, 30 days after delivery.

"Yours truly,

"[Signed]   Stewart & Donohue.

"Accepted Dec. 13, 1907.

Monad Engineering Co., A. T. Prescott.

1,000 tons, more or less, required.          "A. T. P."

It is also admitted that no stone was furnished the plaintiff by the defendant under said contract.

The plaintiff contends that the defendant agreed to make the first delivery of this stone within three days after the date of the contract; that it made certain preparations for receiving the same incurring expense thereby; that as soon as it discovered the defendant did not intend to deliver the stone it proceeded to purchase the same elsewhere at an additional expense, and that therefore it has sustained damage to the amount of about $2,000.

The defendant, on the other hand, contends that certain false and fraudulent statements were made to him by the representative of the plaintiff at the time the contract was made; that he relied upon said statements, and later in the day, having discovered their falsity, he promptly rescinded the contract. The defendant further contends that he was not to make the first delivery under the contract until a week subsequent to its date and that the plaintiff has not sustained the damage he is seeking to recover.

We have been asked by counsel for plaintiff to instruct you that in this case there is no evidence of fraud such as would warrant the defendant in rescinding his contract of sale.

The evidence relied upon by defendant, which he contends constitutes fraud, is briefly and substantially as follows:

(1)   That the plaintiff made false statements with respect to the work for which the stone was to be used.

(2)   That the credit of the plaintiff was good, or, as the witness says, "A No. 1."

(3)   That the materials for the work, of which this stone was to form a part, had been paid for up to within 30 days of the delivery of such materials.

Taking up these alleged false statements in the order we have here placed them, it appears from the evidence, with respect to the first, that there was no false statement concerning the character of the stone to be used. The defendant contends that he inquired whether this stone was for the same work which he bid on in the June previous, but he admits that the stone in each instance was similar and was to pass government inspection. Indeed, the defendant admits that his only reason for making such inquiry was

to ascertain whether it was likely to conflict with his business principle of not interfering with men engaged in a similar business.

With respect to the second point, namely, the credit of the plaintiff, there is no conflict of testimony. There is no testimony to show that on December 13th, when the contract was made, that the credit of the plaintiff was not good. On the other hand, there is testimony to show that it was good.

The testimony concerning the third alleged false statement, namely, that all materials had been paid for up to within 30 days of delivery, is confined to the testimony of one witness, a Mr. Ward, who began to furnish material in August and for which he was not paid until December thirteenth and fifteenth following. It is uncertain from the testimony whether Ward's account was or was not overdue at the time of payment.

It is a well-known principle of law that fraud avoids a contract. In order to thus avoid it, however, our courts have held that three things are essential: (1) The misrepresentation must relate to something material and substantial. (2) The contract must appear to have been induced by it. (3) The confidence and belief of the party setting up the fraud must have been a reasonable one.

There is another essential recognized by all the text-writers, and that is that the fraud must have worked an actual injury. "To avoid a contract for false representations, the representations must relate distinctly and directly to the contract, must affect its very essence and substance, and must be material to the contract. If the representations relate to other matters, or to the contract in a trivial and unimportant respect only, or are wholly collateral, they afford no ground for avoiding the contract." *Stone and Wellington v. Robie*, 66 *Vt.* 245, 29 *Atl.* 257.

We do not see how the first statement relied upon concerning the work for which the stone was to be used could be distinctly and directly related to the contract or could in any way affect its essence or substance. This statement neither affects the quantity or the quality of the stone to be furnished under the contract, or the ability of the plaintiff to pay for the same. It affects nothing but the rule or practice of the defendant in the conduct of his business, and cannot be recognized in law as an excuse for avoiding the contract.

With respect to the third statement, that the plaintiff paid for all materials for a particular contract within 30 days of delivery, taken alone and in the absence of any evidence that at the time the statement was made the credit of the plaintiff was bad, and in the absence of any suggestion that the defendant intended to or could have relied upon any builder's lien to secure his claim, does not, we think, affect the essence and substance of the contract.   Indeed, it does not relate distinctly and directly to the contract.

It is an inquiry about whether the plaintiff had paid for certain material used by it at a certain time, and does not directly relate to the contract in question, except in so far as it goes to show the inability of the plaintiff to comply with the terms of payment of his contract.   But the defendant not having shown the plaintiff's inability to pay, this representation becomes wholly immaterial and in no way enters into any essentials of the contract.   Suppose at the time the contract was entered into the plaintiff had paid the amount in cash instead of agreeing to pay 30 days after delivery. Could it be then said that a false statement by the plaintiff that he had paid for certain materials within a certain time would justify the defendant in returning the money and rescinding his contract? Could that be any part of the contract, or could it be a material inducement to the defendant to enter into it?   We think not, and the credit of the plaintiff being good at the time puts this defendant in about that position.

In addition to this there is no evidence in this case to show that these alleged false representations would in any way have caused injury to the defendant if he had proceeded on his contract.

There is some authority for holding that whether a false statement is material is a matter to be determined by the jury.   It would seem unreasonable to hold that every sort of false statement that might be made between parties to a contract at the time the contract was made must be submitted to a jury in order to determine whether they were material.   The burden is upon the party alleging fraud to prove it.   Fraud is never presumed. Whether there is any evidence to show fraud, or facts from which the jury may reasonably infer fraud, would in most cases at least, be for the court to determine.

Charge.

In the case of *Caswell v. Hunton*, 87 *Me*. 277, 32 *Atl*. 899, the court said: "Whether the defendant made the false representation, and whether, if he made it, he knew it to be false, and whether the plaintiff was ignorant of its falsity, and whether he relied upon it, and was thereby damaged, are undoubtedly questions of fact for the jury. But, assuming all these facts to be proved, the materiality of the representation is a question of law for the court" —citing *Penn. Ins. Co. v. Crane*, 134 *Mass*. 56, 45 *Am. Rep*. 282; *Bigelow on Fraud, Vol*. 1, *p*. 139, and cases there cited.

For these reasons we say to you that there is no evidence of fraud in this case such as would warrant the defendant in rescinding his contract of sale.

Therefore the only question to be determined by you is whether or not the plaintiff has been damaged by the failure of the defendant to comply with the terms of his contract, and, if damaged, to ascertain the amount thereof.

The plaintiff is entitled to recover the loss it has sustained, if any, by reason of the failure of the defendant to comply with the terms of his contract. The measure of damages is the difference between the contract price and the market value of the goods at the time and place of promised delivery, including such expenses as were necessarily connected therewith. It was the duty of the plaintiff to purchase this stone at the lowest price it could get it, and at a place where it could be delivered at the least expense. You should first consider whether or not this was done. If you are satisfied it was done, you should next consider the difference in cost to this plaintiff, if any, between the stone delivered at the wharf in Wilmington and the stone delivered at the wharf in Chester.

And if you should find from the evidence that the defendant knew the stone was not to be used at the point where he was to deliver it, but on the other hand was to be loaded on scows, the plaintiff would be entitled to recover any increase in cost of such loading and the expenses necessarily incurred by the plaintiff in connection therewith, due to the failure of the defendant to perform his contract.

After the jury had retired to their room, they sent a written

request to the court for further instructions.  Upon being brought into the courtroom, HASTINGS, J., made the following inquiry of the jury  "Can any member of the jury state to the court your difficulty any more clearly than you have in this communication you have sent to the court?"

A Juror:—I would state that I don't fully understand your charge in reference to fraud and credit, as to some action of the court you stated in certain cases, and you cited a case, and I don't clearly understand that.

HASTINGS, J.:—We will read this much of the charge and see whether this will answer your question.

"For these reasons we say to you that there is no evidence of fraud in this case such as would warrant the defendant in rescinding his contract of sale.

"Therefore the only question to be determined by you is whether or not the plaintiff has been damaged by the failure of the defendant to comply with the terms of his contract, and, if damaged, to ascertain the amount thereof."

Does that answer your question?

The Juror:—That answers my question.

Verdict for plaintiff.