Timothy MERRITT, Claimant
Below, Appellant,

v.

UNITED PARCEL SERVICE,
Employer Below,
Appellee.

No. 318, 2007.

Supreme Court of Delaware.

Submitted: July 23, 2008.
Decided: Sept. 4, 2008.

R. Scott Kappes, Esquire, of Schmitting-er & Rodriguez, P.A., Newark, Delaware; for Appellant.

Nancy Chrissinger Cobb, Esquire, of Chrissinger & Baumberger, Wilmington, Delaware; for Appellee.

Before HOLLAND, BERGER and JACOBS, Justices.

JACOBS, Justice.

Timothy Merritt appeals from a Superior Court judgment affirming a decision of the Industrial Accident Board (the "Board") to terminate disability benefits paid to Merritt by his employer, United Parcel Service ("UPS" or "Employer"). On appeal, Merritt claims that the Superior Court erroneously upheld the Board's decision, which in turn was erroneous because the Board: (1) failed to give conclusive effect to UPS's admission of liability; and (2) prospectively determined an issue not before the Board, by finding that Merritt's partial disability would end on a specific future date. Because we conclude that Merritt's first claim of error is meritorious and reverse on that ground, we do not reach Merritt's second claim.

### FACTS [1]

On May 16, 2005, Merritt, who worked as a laborer for UPS, herniated a disc in

---

1. The facts are summarized from the decisions below: *Merritt v. United Parcel Service,* C.A. No. 06A–06–016, 2007 WL 1651961 (Del.Super.Ct., May 31, 2007), at 1–2 (the "Superior Court Decision"); *Merritt v. United*

his lower back while lifting boxes off a conveyor belt. Merritt continued working at UPS with physical restrictions until September 13, 2005, when his persistent pain and numbness became severe. As a consequence, UPS agreed to pay Merritt total disability benefits at a rate of $285.33 per week.

On October 26, 2005, Dr. Ali Kalamchi performed surgery to repair Merritt's disc herniation. After the surgery, Merritt reported a marked decrease in pain and numbness. Dr. Kalamchi ordered complete bed rest for one month, followed by physical therapy and rehabilitation. By December 2005, however, Merritt encountered more back problems when one of his discs "blew out" while he was grocery shopping. Merritt also lost bowel and bladder control.

On January 9, 2006, UPS filed a Petition to Terminate Benefits, claiming that Merritt was no longer totally disabled and could return to work. Two days later, on January 11, 2006, Dr. Kalamchi performed a second surgery on Merritt. According to Dr. Kalamchi's January 26, 2006 note, Merritt "was to take it easy and avoid heavy lifting." The note did not indicate Merritt's disability status, however.[2] On March 2, 2006, Dr. Kalamchi reexamined Merritt and noted "additional improvement in back pain and left buttock pain, no limp, and no shooting pain or numbness down the leg." He prescribed therapy and weight reduction, and asked Merritt to return for a follow-up visit on April 24, 2006.

On March 8, 2006, Dr. Lanny Edelsohn, who was retained by UPS for that purpose, examined Merritt independently. In his post-examination report, Dr. Edelsohn opined that Merritt was no longer totally disabled and could return to work in a sedentary position, with restrictions but not to his job at UPS. Dr. Edelsohn anticipated that Merritt would reach maximum medical improvement in about 90 days and "should return to work starting out at four hours per day and gradually increas[e] his hours ... over [a period of] four to six weeks."[3] Dr. Edelsohn, both when he prepared his report and also on the date of his deposition, was unaware that Dr. Kalamchi had placed Merritt on total disability. The reason was that it was not until March 22, 2006 that Dr. Kalamchi issued a disability slip retroactively placing Merritt on total disability from January 11, 2006 until April 24, 2006.

On March 29, 2006, on his attorney's advice, Merritt met with Dr. Steven D. Grossinger for a second opinion. Dr. Grossinger diagnosed Merritt with lumbar radiculopathy. He concluded that Merritt could not return to work for UPS, because of continuing pain and because of abnormalities in his neurological examination. Dr. Grossinger issued a disability slip placing Merritt on total disability for three months beginning March 29, 2006.[4]

On April 4, 2006, 30 days before the scheduled Board hearing, UPS's counsel sent a letter via facsimile to the Board (the "Letter"), which stated:

*Parcel Service*, IAB Hearing No. 1269872 (June 6, 2006), at 4, 6 (the "Board Decision").

2. Dr. Kalamchi also noted "excellent relief of left leg pain, minimal residual numbness, and dramatic improvement in bowel and bladder function" and that Merritt "could walk without aid or limp." Board Decision, at 15.

3. Dr. Edelsohn's report was dated March 10, 2006. Dr. Edelsohn also prepared a Physical Capabilities Form, dated March 13, 2006.

4. Dr. Grossinger did not review Dr. Kalamchi's March 2, 2006 notes in making his diagnosis. Merritt was scheduled to see Dr. Grossinger again on May 8, 2006, four days after the Board hearing.

Please be advised that the Employer/Carrier:

1. Admits a transient period of recurrence from January 11, 2006 (the date of the second surgery) to March 8, 2006 (the date of the defense medical examination);

2. *Admits temporary partial disability benefits from March 8, 2006 to the present and on-going at a rate of $75 per week;* and

3. It should be noted that the Employer cannot accommodate sedentary or light duty restrictions and it is therefore appropriate that the claimant seek alternative work.[5]

Following a May 4, 2006 hearing, the Board granted UPS's Petition to Terminate Benefits. In its June 2, 2006 order, the Board held that: (a) Merritt's total disability ended on April 24, 2006, and (b) Merritt was entitled to partial disability benefits, but only for a closed period of six weeks from and after the end of the total disability period, *i.e.*, from April 24, 2006 to June 5, 2006.

In finding that Merritt's total disability had ended, the Board considered Dr. Edelsohn's report (opining that, as of March 2006, Merritt could return to part-time work); Dr. Kalamchi's disability slip (placing Merritt on total disability until April 24, 2006); and Dr. Grossinger's disability slip (placing Merritt on total disability until June 28, 2006). Because Dr. Grossinger was not Merritt's treating physician, the Board disregarded his opinion.[6] The Board found that Merritt was no longer totally disabled, because: (i) Dr. Kalamchi had noted improvement in Merritt's condition and (ii) Dr. Edelsohn had opined that Merritt could return to part-time work in a sedentary position, albeit with restrictions. The Board found that the effective end date of Merritt's total disability status was April 24, 2006 (as per Dr. Kalamchi's disability slip), because Merritt "[was] permitted to rely on his treating doctor's no-work orders ... regardless of actual physical ability or condition."[7] Merritt does not dispute the Board's findings regarding total disability on this appeal. Merritt disputes only the Board's decision with respect to partial disability.

As earlier noted in his March 2006 report, Dr. Edelsohn opined that Merritt could return to full-time employment after a period of "four to six weeks" of part-time work. Based solely on Dr. Edelsohn's opinion, the Board found that Merritt was "capable of returning to [full-time] work in a sedentary capacity, beginning with part[-]time hours and increasing to full[-]time hours after six weeks." The Board concluded that Merritt was "entitled to partial disability compensation at a rate of $141.95 per week for a period of six weeks following the termination of total disability," *i.e.* until June 5, 2006, but was "not eligible for partial disability compensation after the six week period has ended."[8]

5. (Italics added). Merritt's counsel was copied with the Letter.

6. Board Decision, at 16, 18 (citing *Delhaize America, Inc. v. Baker*, 2005 WL 2219227, at *1 (Del.Supr.) (holding that "if a claimant is instructed by his *treating* physician that he or she is not to perform *any* work, the claimant will be deemed to be totally disabled during the period of the doctor's order.")) (emphasis added to "treating").

7. *Id.* at 16 (citing *Gilliard–Belfast v. Wendy's, Inc.*, 754 A.2d 251, 254 (Del.2000)).

8. Because the hearing was held on May 4, 2006, and the Board issued its decision on June 2, 2006, the Board effectively pre-set a future date for Merritt's partial disability to terminate.

Merritt appealed the Board's decision to the Superior Court. Merritt claimed that the Board erred in two respects: (a) by finding that Merritt was entitled to partial disability benefits for only six weeks, rather than giving conclusive effect to UPS's admission of liability—contained in UPS's Letter and reiterated at the Board hearing—that his partial disability was "ongoing;" and (b) by finding that Merritt would be able to return to full-time employment six weeks after his total disability period ended, thereby terminating Merritt's partial disability benefits as of a future date.

Addressing Merritt's first claim, the Superior Court found that the Letter constituted an amendment to UPS's pre-trial memorandum. The Court then summarily concluded that the Board did not abuse its discretion in its treatment and consideration of the Letter, because by finding Merritt entitled to partial disability payments for a closed period of six weeks, the Board gave effect to UPS's "recognition that it was responsible for partial disability benefits for a *limited* period of time." [9] The Superior Court also rejected Merritt's second claim of error, holding that 19 *Del. C.* § 2325 permits the Board to set a future date as the end date for partial disability compensation. This appeal followed.

### *ANALYSIS*

██ On appeal Merritt presents the same two claims of error. Where the Board's decision is supported by substantial evidence and is free from legal error, this Court will affirm.[10] This Court does not, however, weigh evidence, decide questions of credibility, or make its own factual findings. It determines only if the evidence is legally adequate to support the Board's factual findings.[11] Alleged errors of law, however, are subject to *de novo* review.[12] Absent errors of law, we review the Board's decision for abuse of discretion.[13]

██ Preliminarily, UPS argues that Merritt's first claim of error was not properly preserved for appeal, for two reasons. First, UPS contends that the Letter was never made an exhibit at the Board hearing. That argument is not persuasive. Although the Letter was not formally introduced as an exhibit at the Board hearing, the Board referred to the Letter in its decision and both parties were fully aware of its contents. Moreover, during the Board hearing UPS's counsel repeatedly

---

**9.** Superior Court Decision, at 21 (emphasis added). In so concluding, the Superior Court focused on the first part of UPS's admission regarding partial liability (UPS "[a]dmits *temporary* partial liability disability benefits") but disregarded the second part of that admission (UPS admits liability "from March 8, 2006 *to the present and ongoing*") (emphasis added). Under 19 *Del. C.* § 2325, compensation for partial disability is by definition "temporary." Section 2325 states that the compensation for partial disability "shall be paid during the period of such partial disability for work, *not, however, beyond 300 weeks*." (emphasis added).

**10.** *General Motors v. Freeman,* 164 A.2d 686, 688 (Del.1960); *Histed v. E.I. DuPont DeNem-*

*ours & Co.,* 621 A.2d 340, 342 (Del.1993). Substantial evidence is evidence that a reasonable person might accept as adequate to support a conclusion. *Oceanport Ind., Inc. v. Wilmington Stevedores, Inc.,* 636 A.2d 892, 899 (Del.1994).

**11.** *Johnson v. Chrysler Corp.,* 213 A.2d 64, 66–67 (Del.1965); 29 *Del. C.* § 10142(d).

**12.** *Darnell v. BOC Group Inc.,* 2001 WL 879911, at *3 (Del.Super.) *aff'd*, 2002 WL 370289 (Del.Supr.); *West v. Wal–Mart, Inc.,* 2006 WL 1148759, at *2 (Del.Super.).

**13.** *Glanden v. Land Prep, Inc.,* 918 A.2d 1098, 1100 (Del.2007); *Firestone Tire & Rubber Co. v. Adams,* 541 A.2d 567, 570 (Del.1988).

referred to the Letter and reiterated the admissions contained therein.[14]

Second, UPS argues that Merritt's counsel remained silent when UPS's counsel described the Letter as an amendment to UPS's pre-trial memorandum, and never asked the Board to give the Letter "conclusive, judicial effect." That argument must also be rejected. Merritt does not dispute the finding that the Letter was an amendment to UPS's pre-trial memorandum. His claim is that the Board failed to give the appropriate legal effect to UPS's admission of liability in its Letter. It is undisputed that Merritt's counsel did not specifically ask the Board to apply Superior Court Civil Rule 36 or to give "conclusive, judicial effect" to UPS's admission. But, as discussed below, Merritt was entitled to expect that the Board would give conclusive effect to UPS's admission, without his counsel having to make a formal request to that effect. Accordingly, Merritt is not precluded from claiming that the Board erroneously failed to give conclusive effect to UPS's admission.[15]

■ We conclude that UPS's admission was the equivalent of a judicial admission and should therefore have been given conclusive effect. Voluntary and knowing concessions of fact made by a party during judicial proceedings (e.g., statements contained in pleadings, stipulations, depositions, or testimony; responses to requests for admissions; counsel's statements to the court) are termed "judicial admissions."[16] Here, UPS voluntarily and expressly conceded in its Letter to the Board that Merritt's partial disability was "on-going." UPS's counsel reiterated that admission at the Board hearing, and asked the Board to "enter an order consistent with [the][L]etter." In these circumstances, UPS's admission, made during the administrative proceedings before the Board, merits the same treatment as a judicial admission.

■ Although there are no Delaware cases directly on point, judicial admissions, as distinguished from evidentiary admissions,[17] are traditionally considered conclu-

14. UPS's counsel made the following references to the Letter in her opening statement: "[W]e did amend the pre-trial to admit that there was a recurrence of total disability or ongoing disability[.] [ . . . ] [W]e are going to ask that you enter an order consistent with my letter of April 4th, 2006 in which [Merritt's] temporary total disability benefits are terminated effective March 8th, 2006 with temporary partial disability benefits at the rate of $75 per week beginning March 8, 2006[.] [T]hank you." UPS's counsel also referred to the Letter in her closing remarks, and stated "we picked $75 a week [because] we thought it was a fair figure[.] [T]he Board may feel something else is fair[.]" See Superior Court Decision, at 20.

15. See Supr. Ct. R. 8 ("Only questions fairly presented to the trial court may be presented for review; provided, however, that when the interests of justice so require, the Court may consider and determine any question not so presented.").

16. See, e.g., AT & T Corp. v. Lillis, 953 A.2d 241, 257 (Del.Supr.2008) (discussing the scope of judicial admissions by counsel); Keller v. United States, 58 F.3d 1194, 1199 n. 8 (7th Cir.1995) ("Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them."); Kopacz v. Day Kimball Hosp. of Windham County, Inc., 64 Conn.App. 263, 779 A.2d 862, 867 (2001) ("Judicial admissions are voluntary and knowing concessions of fact by a party or a party's attorney occurring during judicial proceedings."); John B. Conomos, Inc. v. Sun Co., Inc. (R & M), 831 A.2d 696, 712 (Pa.Super.2003) ("Statements of fact by one party in pleadings, stipulations, testimony, and the like, made for that party's benefit, are termed judicial admissions.").

17. See, e.g., Tianti v. William Raveis Real Estate, Inc., 231 Conn. 690, 651 A.2d 1286, 1289 n. 6 (1995) ("[J]udicial admissions are conclusive on the trier of fact, whereas evidentiary admissions are only evidence to be accepted

sive and binding both upon the party against whom they operate, and upon the court.[18] Consequently, the Board should have given UPS's admission conclusive effect. A tribunal may, however, in the exercise of its discretion, relieve a party from the conclusiveness of its judicial admissions.[19] That principle is reflected in Board Rule 14(B), which relevantly provides that the Board may "disregard any

customary rules of evidence and legal procedures *so long as such a disregard does not amount to an abuse of its discretion."* [20] We must, therefore, decide whether the Board, by not giving conclusive effect to UPS's admission, abused its discretion.

The Board referred twice to UPS's admission in its written decision. The first

or rejected by the trier."); *Keller v. United States*, 58 F.3d at 1199 n. 8 ("A judicial admission is conclusive, unless the court allows it to be withdrawn; ordinary evidentiary admissions, in contrast, may be controverted or explained by the party.").

**18.** *See, e.g., Airco Indus. Gases, Inc. v. Teamsters Health and Welfare Pension Fund*, 850 F.2d 1028, 1036–37 (3d Cir.1988) ("A judicial admission, deliberately drafted by counsel for the express purpose of limiting or defining the facts in issue, is traditionally regarded as conclusive [ ... ] Th[e] [judicial] admission is not merely another layer of evidence, upon which the district court can superimpose its own assessment of weight and validity. It is, to the contrary, an unassailable statement of fact that narrows the triable issues in the case"); *Conomos v. Sun*, 831 A.2d at 712–13 ("If there is some support in the record for the truth of an averment, the trial court abuses its discretion if it disregards the [judicial] admission. Such averments are binding on a party whether admitted by counsel or the client.") (internal citations omitted).

**19.** *See, e.g., AT & T Corp. v. Lillis*, 953 A.2d 241, 251 (Del.Supr.2008); *Mamudovski v. BIC Corp.*, 78 Conn.App. 715, 829 A.2d 47, 56 (2003) ("A party is bound by a judicial admission unless the court, in the exercise of a reasonable discretion, allows the admission to be withdrawn, explained or modified.") (citing *Hirsch v. Thrall*, 148 Conn. 202, 169 A.2d 271, 273 (1961)); *Schneider v. Chavez–Munoz*, 9 Neb.App. 579, 616 N.W.2d 46, 57 (2000) ("A judicial admission is ordinarily final and conclusive upon the party by whom it was made, unless the trial court, in the exercise of judicial discretion, timely relieves the party from that consequence.") (citing *Kipf v. Bitner*, 150 Neb. 155, 33 N.W.2d 518, 519 (1948)); *MacDonald v. General Motors Corp.*, 110 F.3d 337, 340 (6th Cir.1997) ("[C]onsiderations of fairness and the policy of encour-

aging judicial admissions require that trial judges be given broad discretion to relieve parties from the consequences of judicial admissions in appropriate cases.") (citing *United States v. Belculfine*, 527 F.2d 941, 944 (1st Cir.1975)); *L.P. Larson, Jr., Co. v. Wm. Wrigley, Jr., Co.*, 253 F. 914, 917–18 (7th Cir.1918) ("Undoubtedly a litigant has no cause for complaint if the court accepts his solemn and sworn admissions in pleadings and testimony as true. But we must reject the contention that his adversary has the right to compel the court to do so. [ ... ] [Appellant] may have relied on the stipulation of fact in bill and counterclaim to save hunting up and bringing in witnesses of wrongful sales. [ ... ] In such a situation, ... [the appellee] should be left within the knot of his averments in pleadings and admissions in testimony, unless the court can find an absolute demonstration from other evidence in the case or from facts within judicial notice ... that under no circumstances could the averments and admissions be true."). *See also* Superior Court Civil Rule 36(b), which governs requests for admissions and their effects, and which expressly states that "[a]ny matter admitted under this rule is conclusively established unless the Court on motion permits withdrawal or amendment of the admission."

**20.** Board Rule 14(B) (emphasis added). The Board's discretion in considering party admissions is further emphasized by Board Rule 9(B) which departs from its judicial counterparts in providing that the Board *"may* make an order which recites the action taken at the [pre-trial] conference ... and which limits the issues for hearing to those not disposed of by admissions or agreements of counsel." (emphasis added). No such order was entered here. *See* Super. Ct. Civ. R. 16(e) and Fed. R.Civ.P. 16(d), which mandate that a pre-trial order be entered.

reference was in its summary of the procedural posture of the petition.[21] The second was in its discussion of Merritt's total disability. The Board relied on UPS's admission that Merritt had suffered a recurrence of total disability as of January 11, 2006.[22] Inexplicably, however, the Board made no reference to that admission when discussing the issue of partial disability. Nor did the Board explain why it rejected UPS's admission that Merritt's partial disability was "ongoing," and chose instead to conclude (in reliance upon Dr. Edelsohn's opinion) that Merritt's partial disability would cease six weeks after the total disability period ended.

The Board's failure to explain its rejection of UPS's admission is troubling. Dr. Edelsohn—who was not Merritt's treating physician and who had examined Merritt only one time—was the only medical expert witness who opined on the issue of partial disability.[23] Merritt did not present any medical expert testimony on this issue. His counsel's decision not to do so was likely in reliance on the binding effect of UPS's judicial admission,[24] which was facially inconsistent with Dr. Edelsohn's opinion.[25]

In these circumstances, we must conclude that the Board abused its discretion by disregarding UPS's admission that Merritt's partial disability was "on-going," and by setting a six week end date to Merritt's entitlement to partial disability benefits. Given our disposition of Merritt's first claim, we do not reach the issue of whether the Board may set a future date as the end date for partial disability benefits.

21. The Board noted: "In an April 4, 2006 letter to the Board, the Employer admitted to a period of total disability from January 11, 2006 (date of second surgery) through March 8, 2006 (date of defense medical examination). The Employer also admitted to an obligation to pay temporary partial disability from March 8, 2006 'to the present and on-going at a rate of $75 per week.'" Board Decision, at 2.

22. The Board held: "[T]he [total] disability period begins on January 11, 2006, the date of Claimant's surgery. Claimant was clearly totally disabled from work at that time; in fact, the Employer admitted this in its April 4 letter to the Department of Labor." Board Decision, at 17.

23. The evidence that was before the Board consisted of Dr. Edelsohn's deposition, Dr. Grossinger's deposition, Merritt's testimony at the Board hearing, and Langrehr's testimony at the Board hearing. Dr. Kalamchi's deposition was not taken, apparently due to cost-related considerations.

24. Merritt argues that "reliance on the amendment to the pretrial memorandum and subsequent trial admission may have altered Mr. Merritt and his trial counsel's strategy at the hearing. Had they known there was a possibility that the Board would ignore the amendment to the pretrial memorandum they may have chosen to have another medical expert testify or to challenge the results of the Labor Market Survey [prepared by UPS's vocational specialist] through vocational testimony of their own. However, thinking that the worst case scenario at trial was ongoing partial disability at $75 weekly, the added expense of further medical and/or vocational testimony likely did not make financial sense."

25. See Reynolds Aluminum Bldg. Prod. Co. v. Leonard, 395 Mass. 255, 480 N.E.2d 1, 6 (1985) (holding that defendants, who had made several requests for admissions to which plaintiffs never responded, "were prejudiced by the judge's failure to explain his actions concerning the admissions, where the judge found as fact a matter directly contrary to one admission. [ . . . ] The judge may not simply decide that he finds other evidence relating to the admitted matter more credible than the admission.") (citing Brook Village North Assocs. v. General Elec. Co., 686 F.2d 66, 71 (1st Cir.1982)). See also MOORE'S FEDERAL PRACTICE, § 36.03[2] (3d ed.2003) (any admission that is not amended or withdrawn cannot be "ignored by the court even if the party against whom it is directed offers more credible evidence.").

## CONCLUSION

For the foregoing reasons, the judgment of the Superior Court is reversed with instructions to remand the case to the Board for a new determination regarding Merritt's entitlement to partial disability compensation, and the amount thereof.