IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

BON AYRE LAND LLC, a : 
Delaware Limited Liability Co., :  C.A. No. K14A-08-001 WLW
 :
Appellant, :
 :
v. :
 :
BON AYRE COMMUNITY :
ASSOCIATION, :
 :
Appellee. :

Submitted: November 17, 2014
Decided: February 26, 2015

**ORDER**

Upon the Appeal from the Decision of the
Delaware Manufactured Home Relocation Authority;
Superior Court's Decision on
Appellant's Request for a Rent Increase.
*Denied.*

L. Vincent Ramunno, Esquire of Ramunno & Ramunno, P.A., Wilmington, Delaware; attorney for Appellant.

James G. McGiffin, Jr., Esquire of Community Legal Aid Society, Inc., Dover, Delaware; attorney for Appellee.

WITHAM, R.J.

*Bon Ayre Land LLC v. Bon Ayre Comm. Assoc.*
C.A. No. K14A-08-001 WLW
February 26, 2015

The Delaware General Assembly recently enacted legislation under the Delaware Manufactured Home Owners and Community Owners Act ("Act"), which among other things, governs rent increase in manufactured housing communities. The new legislation mandates that a community owner, prior to increasing rent above the average annual increase of the Consumer Price Index For All Urban Consumers in the Philadelphia-Wilmington-Atlantic City area ("CPI-U") comply with a number of statutory proscribed procedures.[1]

This case involves a rent justification action between community owner Bon Ayre Land LLC ("Appellant"), and Bon Ayre Community Association[2] ("Appellee"). Pursuant to 25 *Del. C.* § 7044, the Appellant appeals from the non-binding decision of the arbitrator who found that the Appellant's proposed rent increase was not justified under the Act. The Appellant raises four issues on appeal: (1) The rent justification act is unconstitutional, inconsistent and unworkable; (2) the arbitrator erred in excluding relevant and admissible evidence; (3) the arbitrator erred in not complying with the legal doctrine of collateral estoppel; and (4) the arbitrator's decision was contrary to the law and the evidence. I begin by reviewing the Act.

---

[1] *See* 25 *Del. C.* § 7040 *et. seq.*

[2] Bon Ayre Community Association is a corporation organized to represent the interests of the home owners under 25 *Del. C.* § 7001, *et seq.*

2

*Bon Ayre Land LLC v. Bon Ayre Comm. Assoc.*
C.A. No. K14A-08-001 WLW
February 26, 2015


## DELAWARE MANUFACTURED HOME OWNERS AND COMMUNITY OWNERS ACT[3]

The General Assembly provided us with the following purpose:

> Manufactured housing has become a vital source of affordable housing in Delaware, particularly as a home ownership opportunity for low-income households who otherwise would likely not be able to move into home ownership. In recent years, Delaware has experienced a difficult economic climate which has resulted in a crisis in affordable housing availability. Additionally, manufactured home owners make substantial and sizeable investments in their manufactured homes. Once a manufactured home is situated on a manufactured housing community site, the difficulty and cost of moving the home gives the community owner disproportionate power in establishing rental rates. The continuing possibility of unreasonable space rental increases in manufactured home communities threatens to diminish the value of manufactured home owners' investments. Through this subchapter, the General Assembly seeks to protect the substantial investment made by manufactured home owners, and enable the State to benefit from the availability of affordable housing for lower-income citizens, without the need for additional state funding. The General Assembly also recognizes the property and other rights of manufactured home community owners, and seeks to provide manufactured home community owners with a fair return on their investment. Therefore, the purpose of this subchapter is to accommodate the conflicting interests of protecting manufactured home owners, residents and tenants from unreasonable and burdensome

---

[3] Subsequent to the arbitrator's decision and the Appellant's notice of appeal, the 147th General Assembly, pursuant to H.B. 234, amended a number of the statutes at issue. It is a general rule of statutory interpretation that legislation is to be accorded prospective effect unless the General Assembly makes its intention clear to give it retroactive effect. *See Chrysler Corp. v. State, Del.Supr.*, 457 A.2d 345, 351 (1983). Here, there is no such clear intention. Accordingly, for purposes of this appeal, the parties' contentions will be decided under the Act as it existed prior to the amendments.).

3

space rental increases while simultaneously providing for the need of manufactured home community owners to receive a just, reasonable and fair return on their property.[4]

Accordingly, to ensure rental increase is attributed to normal market forces and not the disproportionate bargaining power enjoyed by the community owners; for any increase above the CPI-U, the community owner must demonstrate the increase is justified.[5] To do so, the community owner must demonstrate: (1) it has not had any health or safety violations that persist more than 15 days after it received notice of the violation during the previous twelve month period; (2) the proposed increase is directly related to operating, maintaining, or improving the manufactured home community; and (3) the increase is justified by at least one of several factors.[6]

---

[4] 25 *Del. C.* § 7040.

[5] 25 *Del. C.* § 7042(a).

[6] *Tunnell Companies, L.P. v. Greenawalt*, 2014 WL 5173037, at *2 (Del. Super. Oct. 14, 2014); 25 *Del. C.* § 7042(a)(1)-(2) *see also,* 25 *Del. C.* § 7042(c) ("One or more of the following factors may justify the increase of rent in an amount greater than the CPI-U: (1) The completion and cost of any capital improvements or rehabilitation work in the manufactured home community, as distinguished from ordinary repair, replacement and maintenance; (2) Changes in property taxes or other taxes within the manufactured home community; (3) Changes in utility charges within the manufactured home community; (4) Changes in insurance costs and financing associated with the manufactured home community; (5) Changes in reasonable operating and maintenance expenses relating to the manufactured home community including, but not limited to: costs for water service; sewer service; septic service; water disposal; trash collection; and employees; (6) The need for repairs caused by circumstances other than ordinary wear and tear in the manufactured home community. (7) Market rent.--For purposes of this section, "market rent" means that rent which would result from market forces absent an unequal bargaining position between the community owner and the home owners. In determining market rent relevant considerations include rents

One such factor, and the only one relied on by the Appellant in arbitration and on appeal, is market rent. The Act defines market rent as, "rent which would result from market forces absent an unequal bargaining position between the community owner and the home owners."[7] In calculating market rent, "relevant considerations include rents charged by comparable manufactured home communities."[8] To be considered a comparable manufactured home community within the meaning of the statute, the comparables "must offer similar facilities, services, amenities and management."[9] Finally, at the meeting, the community owner must "disclose financial and other pertinent documents and information supporting the reasons for the rent increase."[10]

In addition to being able to actually show the rental increase is justified within the meaning of 25 *Del. C.* § 7042, the Act requires the community owner to undertake a number of procedural requirements. In a recent case, this Court explained what is procedurally required:

---

charged by comparable manufactured home communities in the applicant's competitive area. To be comparable, a manufactured home community must offer similar facilities, services, amenities and management. (8) The amount of rental assistance provided by the community owner to the home owners under § 7021A of this title.").

[7] 25 *Del. C.* § 7042(c)(7).

[8] *Id.*

[9] *Id.*

[10] *Id.*

5

First, the community owner must give written notice to each affected home owner, the community's home owners' association ("HOA"), and the Authority at least 90 days prior to any increase in rent. Second, if the proposed increase is over the CPI–U, there must also be a meeting between the community owner and the other parties. At the meeting, the community owner must provide [...] disclosures, in good faith, of all material factors resulting in its decision to increase rent. These material factors include "financial and other pertinent documents and information." Finally, if the parties cannot reach a resolution at the meeting, any affected homeowner, or the HOA on behalf of one or more of the affected homeowners, may petition the Authority for non-binding arbitration in which the Authority will render a decision as to whether the community owner may increase rent in the manufactured community.[11]

The Court went on to explain:

If arbitration is sought by one of the parties, the Authority is charged with considering evidence regarding the increases in the costs of operating, maintaining, and improving the affected community. The Authority is to employ the standard codified in 25 *Del. C.* § 7042. If the Authority finds that the community owner has not established the requirements laid out in § 7042, it will deny the community owner's request for the rent increase. The community owner, the affected community's HOA, or any affected homeowner is entitled to appeal to the Superior Court on the record with regard to the Authority's decision to grant or deny the rent increase. The statute requires the Court to make an independent decision based on the record below instead of

---

[11] *Tunnell Companies, L.P.*, 2014 WL 5173037, at *2 (quoting 25 *Del. C.* § 7043) (internal citations omitted).

affirming or reversing the arbitrator's decision.[12]

## BACKGROUND

Bon Ayre is a manufactured home community consisting of 194 homes located in Smyrna, Delaware.[13] Residents of the community own their homes and rent a plot of land from the Appellant.[14] On February 18, 2014 and again on March 10, 2014, Appellant sent the Appellee and affected homeowners notice of Appellant's intent to increase rent above the applicable CPI-U.[15] Appellant scheduled two separate meetings to discuss the rental increase which took place on March 7, 2014 and April 8, 2014.[16] Present at the meeting was Dick Draper, on behalf of the Appellant and members of the Bon Ayre community.[17] The parties where unable to reach an agreement at either meeting and Appellee filed petitions for arbitration for all of the proposed increases.[18] Sometime before arbitration, the Appellant commissioned a

---

[12] *Id.* at *3 (internal citations omitted).

[13] Appendix to Appellee's Answering Brief at 28 (hereinafter "(B_)."

[14] (B4).

[15] (B1) Most of the proposed monthly increases were from $309 to $379, for others the proposed increase was from $349 to $419, and for one individual the increase was from $349 to $379.

[16] (B20; 50).

[17] Arbitration Transcript at 16 (hereinafter "(T_)."

[18] (B2-3).

certified general appraiser to estimate the current market rents of Bon Ayre and a number of comparable manufactured homes communities.[19] The report was completed on May 22, 2014, and contained over 37 pages of comparable data.[20]

On May 28, 2014, the parties participated in arbitration. Based on the record established through live testimony and exhibits, the arbitrator determined the Appellant had not met its burden of proof in justifying a $70 rent increase and limited the increase to $30 a month.[21] Now before this Court is Appellant's timely appeal.

## STANDARD OF REVIEW

"A community owner, [Home Owners Association], or any affected home owner may appeal the non-binding decision of the Arbitrator to the Delaware Superior Court. The appeal is on the record without a trial *de novo*. The Court must independently address arguments of the parties as to whether the record created in the arbitration is sufficient to justify an increase in rent above the CPI–U."[22]

## DISCUSSION

Appellant's first contention is that the Act violates its Delaware Constitutional right to have a trial by jury in civil proceedings. Article I, Section 4 of the Delaware Constitution provides that "[t]rial by jury shall be as heretofore." The legal and

---

[19] (B54-91).

[20] *Id.*

[21] Op. Br. Ex. C.

[22] *Tunnell Companies, L.P.*, at *4 (citing 25 *Del. C.* § 7044) (internal citations omitted).

historical significance of "heretofore" has been examined at length by the Supreme

Court of Delaware.[23]   The Court has explained:

> When Delaware adopted its next Constitution in 1792, its citizens were guaranteed the right to trial by jury "as heretofore."  Consequently, since its inception in 1776, the Delaware Constitution has afforded its citizens the right to trial by jury in both criminal and civil proceedings.  In doing so, the Delaware Constitution has expressly preserved all of the fundamental features of the jury system as they existed at common law. A sine qua non of that common law jurisprudence is the principle that either party shall have the right to demand a jury trial upon an issue of fact in an action at law.  As previously noted, the 1776 Delaware Declaration of Rights, which was preserved by the "heretofore" text in the 1792 Constitution, referred to the right to trial by jury regarding factual issues as "one of the greatest securities of the lives, liberties and estates of the people.[24]

In other words, absent a newly created statutory right to trial by jury, if the right for

a particular cause of action did not exist at common law, then it does not exist today.[25]

Accordingly, the ultimate issue will always involve a historical analysis.    For

---

[23]  *See McCool v. Gehret*, 657 A.2d 269, 281 (Del. 1995); *Claudio v. State*, 585 A.2d 1278, 1291 (Del. 1991).

[24]  *McCool*, 657 A.2d at 282.

[25]  The right to a jury trial has been found nonexistent in a number of contexts, for example: in civil non-support cases, *State v. Cahill*, 443 A.2d 497, 499-500 (Del. 1982); determining the second offender status of a criminal defendant, *Mergenthaler v. State*, 239 A.2d 635 (Del. 1968); trial of the shortage of accounts of a tax collector, *Aetna Cas. & Sur. Co. v. Mayor & Council*,160 A. 749 (Del. Ch. 1932); and matters involving insolvency, *MacKensie Oil Co. v. Omar Oil & Gas Co.*, Del. Ch., 120 A. 852 (Del. Ch. 1923).

example, after exploring whether parents had a right to trial by jury in a civil non-support action at common law, the Delaware Supreme Court held the following:

> [I]t is clear that such an action did not exist in a non-statutory form at law. Insofar as such an action was for the support of a legitimate child, it was equitable and, insofar as such an action was for the support of an illegitimate child, it was non-existent. Thus, as we view this case, it is based on a new statutory cause of action intended by the General Assembly to be tried without a jury.[26]

Turning to this case and the cause of action at issue, the Court can find no common law equivalent. In fact, the Appellant does not make that argument. Rather, part of the Appellant's argument appears to suggest[27] the same argument put forth by the Appellant in *Cahill v. State* – that any factual issue related to a legal proceeding triggers the right to a jury trial. In *Cahill*, the Court explained:

> With deference to that view, we submit that it does not make sense. It proceeds, it seems to us, on the incorrect premise that historically there were legal factual issues for a jury and equitable factual issues for the Chancellor. The simplest contract case makes our point regarding this view of factual issues. If a defendant refuses to convey a chattel pursuant to a contract, and the plaintiff claims the chattel is unique and

---

[26] *Cahill*, 443 A.2d at 497 (internal citations omitted).

[27] The Appellant's Brief contains the following quote, "[t]rial by jury of facts where they arise is one of the greatest securities of the lives, liberties and estates of the people." Op. Br. at 17 (citing *McCool*, 657 A.2d at 282). The Appellant also cites to *Hopkins v. Justice of Peace Court No. 1*, 342 A.2d 243 (Del. Super. 1975), claiming, if a jury trial is required to protect a tenant in a eviction action, it must also be required to protect infringement on a landowners contractual rights. However, the Appellant's argument completely ignores the meaning of heretofore. Put simply, whether the right to a jury trial historically existed in one cause of action has no bearing on whether it existed in a separate and independent cause of action.

subject to specific performance, the factual issue of the breach is precisely the same in equity as it would be in a damage action at law. We endorse the comment of the dissent in Ross v. Bernhard, 396 U.S. 531, 550, 90 S.Ct. 733, 744, 24 L.Ed.2d 729, 743 (1970): "The fact is, of course, that there are, for the most part, no such things as inherently "legal issues" or inherently "equitable issues." There are only factual issues, and, "like chameleons (they) take their color from surrounding circumstances." (Footnote omitted) Thus the Court's "nature of the issue" approach is hardly meaningful.[28]

The plain reading of the Delaware Manufactured Home Owners and Community Owners Act indicates the General Assembly's intent to have rent justification disputes resolved without a jury trial. Because such an action did not exist at common law, Appellant's constitutional challenge under Article I, Section 4 is without merit.

Appellant also raises a generic due process claim. "Delaware constitutional due process is coextensive with federal constitutional due process,"[29] therefore only one inquiry is necessary. Under both the U.S. and Delaware Constitutions, a person may not be deprived of life, liberty, or property without due process of law. At a minimum, due process requires "some kind of notice and hearing as a preface to curtailment of constitutionally secured property interests."[30] "The fundamental

---

[28] *Cahill*, 443 A.2d at 500.

[29] *Cohen v. State ex rel. Stewart*, 89 A.3d 65, 86 (Del. 2014).

[30] *Id*.

requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. But due process is flexible and calls for such procedural protections as the particular situation demands."[31] To determine whether a challenged procedure satisfies due process:

> Delaware Courts have employed the analysis set out by the United States Supreme Court in *Mathews v. Eldridge*. The "Eldridge factors" instruct a Court to balance: the private interest that will be affected by the official action; the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedures would entail.[32]

This Court has recognized a number of procedural due process safeguards,

> any or all of which may be required in a given situation depending upon the outcome of the balancing test: (1) notice of the basis of the governmental action; (2) a neutral arbiter; (3) an opportunity to make an oral presentation; (4) a means of presenting evidence; (5) an opportunity to cross-examine witnesses or to respond to written evidence; (6) the right to be represented by counsel; and (7) a decision based on the record with a statement of reasons for the result.[33]

---

[31] *Cohen*, 89 A.3d at 86-87 (internal quotations omitted) (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). (*e.g.*, "[a]s a result, due process does not require an evidentiary hearing approximating a judicial trial before every deprivation of rights; indeed, such extensive process is only required in certain limited circumstances.").

[32] *Id*.

[33] *Goldberg v. Rehoboth Beach*, 565 A.2d 936, 942 (Del. Super. 1989).

*Bon Ayre Land LLC v. Bon Ayre Comm. Assoc.*
C.A. No. K14A-08-001 WLW
February 26, 2015

The Appellant argues that the Act violates its due process because the arbitration hearing calls for compliance with the Delaware Rules of Evidence – including the application of the hearsay exclusion – without providing for subpoena power and the compulsory attendance of witnesses. As such, Appellant argues certain evidence "cannot possibly be obtained for the arbitration hearing," and therefore, the Act improperly deprives citizens of its property interest without an "opportunity to be heard" and present witnesses."[34]

First, the Appellant provides no authority to support its argument that when hearsay applies, due process requires the ability to subpoena witnesses.[35] Additionally, it is not necessary to go through an elaborate *Mathews v. Eldridge* analysis because the record indicates that Appellant was accorded procedural safeguards in excess of what this "particular situation would demand." After the parties were unable to reach an agreement following their meeting, the Appellant received proper notice of the mandatory arbitration. The Appellant received a hearing before a neutral arbitrator at which time the parties "were represented by counsel, made oral presentations, presented witnesses and written evidence in support of their

---

[34] Op. Br. at 19.

[35] This Court, *sua sponte*, notes the distinction between this Act and prior precedent involving other administrative bodies such as the Industrial Accident Board where the right to subpoena are explicitly provided for in the statute. *See San Del Packing Co. v. Garrison*, 761 A.2d 11, 13-14 (Del. 2000) (holding, when the right to subpoena can be found in the governing statute, "the Board must respect the decision of a party to use the subpoena process..."); *Torres v. Allen Family Foods*, 672 A.2d 26, 32 (Del. 1995) (When it comes to procedural due process, "the Board has a basic responsibility to comply with reasonable requests for the issuance of subpoenas.").

position, cross-examined witnesses and received a decision based on the record and the reasons for which were clearly articulated."[36] Accordingly, the Appellant's due process argument is without merit.

Before addressing the Appellant's remaining claims, it is necessary to consider the arbitrator's finding, that the parties stipulated to compliance under 25 *Del. C.* § 7043(b), and therefore, waived any challenge at arbitration and on appeal.

"Voluntary and knowing concessions of fact made by a party during judicial proceedings (e.g., statements contained in pleadings, stipulations, depositions, or testimony; responses to requests for admissions; counsel's statements to the court) are termed 'judicial admissions.'"[37] "Although there are no Delaware cases directly on point, judicial admissions, as distinguished from evidentiary admissions, are traditionally considered conclusive and binding both upon the party against whom they operate, and upon the court."[38] That said, "[a] tribunal may, however, in the exercise of its discretion, relieve a party from the conclusiveness of its judicial admissions."[39] The Delaware Supreme Court in *Merritt v. United Parcel Services*, explained the proper use of the Court's discretion with the following quote:

---

[36] *Goldberg*, 565 A.2d at 942.

[37] *Merritt v. United Parcel Serv.*, 956 A.2d 1196, 1201 (Del. 2008). *See also Montgomery v. Achenbach*, 2009 WL 406810, at *3 (Del. Super. Jan. 23, 2009) (citing *Kraus v. State Farm Mut. Auto. Ins. Co.*, 2004 WL 2830889, at *4 (Del. Super. Apr. 23, 2004) ("The determination of whether a party's statement is sufficiently unequivocal to be a judicial admission is a question of law.").

[38] *Merritt*, 956 A.2d 1201-02 (internal citations omitted).

[39] *Id.* at 1202.

Undoubtedly a litigant has no cause for complaint if the court accepts his solemn and sworn admissions in pleadings and testimony as true. But we must reject the contention that his adversary has the right to compel the court to do so. [ ... ] Appellant may have relied on the stipulation of fact in bill and counterclaim to save hunting up and bringing in witnesses of wrongful sales. [ ... ] In such a situation, ... the appellee should be left within the knot of his averments in pleadings and admissions in testimony, unless the court can find an absolute demonstration from other evidence in the case or from facts within judicial notice ... that under no circumstances could the averments and admissions be true.[40]

In the present case, the parties agreed to the terms of a stipulated facts sheet drafted by the arbitrator which read in relevant part, "[a] meeting between the parties was held pursuant to 25 *Del. C.* § 7043(b)."[41] The Appellee argues that the stipulation was narrow and only meant that a meeting took place as required by the statute.[42] The Appellee argues that the stipulation did not touch on, and therefore, did not waive, any issues with the regard to whether the Appellant complied with the statutorily mandated disclosure requirements.[43] The Arbitrator addressed the legal affect of the stipulation for the first time during closing arguments and ultimately held that the aforementioned stipulation relieved the Appellant from demonstrating 25 *Del.*

---

[40] *Id.*

[41] (B1).

[42] An. Br. at 23; (B30).

[43] *Id.*

*C.* § 7043(b) compliance.[44]

Having reviewed the record, especially in light of what 25 *Del. C.* § 7043(b) requires, I disagree. First, the statute begins by stating, "[i]f the proposed rent increase exceeds the CPI-U, the Authority shall schedule a meeting between the parties at a mutually convenient time and place to be held within 30 days from the mailing of the notice of the rent increase,[45] to discuss the reasons for the increase."[46] The next sentence goes on to state, "[a]t the meeting the community owner shall, in good faith, disclose all of the material factors resulting in the decision to increase rent."[47] Under the Act, the community owner is responsible to undertake and ensure compliance with the procedural requirements of the statute.

The plain reading of the stipulation– "[a] meeting between the parties was held pursuant to 25 *Del. C.* § 7043(b)"– is not sufficiently unequivocal to serve as a judicial admission for anything other than the fact that a meeting took place. Since compliance under the statute also contains a disclosure element, the stipulation did not relieve the Appellant from all that was required under 25 *Del. C.* § 7043(b).

Notwithstanding the stipulation as it was submitted into the record, the

---

[44] Op. Br. Ex. C at 5-6.

[45] Prior to arbitration, the parties stipulated to the notice requirement. *See* exhibit 8 and 9 of the record. (In response to the Appellant's request, the Appellee's letter stated, "[w]ith respect to the issue of notices and lease agreements, I will stipulate to the admission of those documents, as they are essential to the record in this case.").

[46] 25 *Del. C.* § 7043(b).

[47] *Id.*

Appellant argues that the arbitrator was correct in finding that, "[i]t was the reasonable impression of [the Appellant] (and myself) that the 7043(b) meeting was settled. [The Appellee] had ample opportunity to dispel that impression. He did not."[48] Again, I disagree. First, as previously mentioned, the stipulation– as written– supports the Appellee's position. While some of the extrinsic evidence can be read to explain the Appellant and arbitrator's misguided assumptions;[49] the record also contains evidence which should have been viewed for what it was – the Appellee laying the foundation for a procedural challenge under 7043(b).

For instance, during the Appellant's case in chief, the Appellee noted the various, and additional, requirements imposed by the statute, "[t]his whole business, this whole rent justification is about a process."[50] In raising the rent, if the new rent is above the CPI-U, all effected parties are required to receive notice and a meeting is scheduled. "And then, at the meeting, the community owner shall in good faith disclose all of the material factors resulting in the decision to increase the rent."[51] "The meeting is the time when the tenants get there. They're entitled to all documents

---

[48] Op. Br. Ex. C at 6. The Appellant claimed he would have presented the case differently at arbitration had he known of the Appellee's procedural challenge. While that may undoubtably be true, there is enough uncontroverted evidence in the record– as explained below– to convince the Court that the meeting was procedurally deficient and any attempt to demonstrate otherwise would be in vain.

[49] *See Id* at 5-6.

[50] (T95).

[51] *Id*.

and pertinent information about what went into the decision to raise the rent ... [i]t is a condition precedent for him being able to raise the rent at all."[52]  Moreover, during the Appellee's case in chief, he asked witnesses who attended the meetings the following questions:  "What information was provided to you at the meeting?"; "Did [the Appellant's representative] show any paper to you at the meeting?"; "But no information [was provided] about why the rent was going up a particular amount?"; "Do you recall March 7th what information was provided ...[w]hat about the April 8th meeting?".[53]  Just because the arbitrator found it "reasonable" to glean additional "impressions" from the surrounding circumstances, does not *ipso facto* require the Appellee to "dispel" them prior to arguing for a literal reading of the stipulation at closing.

Having found that the proffered stipulation was not sufficiently unequivocal to serve as a judicial admission of compliance under 25 *Del. C.* § 7043(b), an independent review of the record below shows the Appellant did not comply with the statutory mandates of 25 *Del. C.* § 7043(b).  Accordingly, this Court is unable to address the merits of the Appellant's remaining arguments.[54]

At the time of the meetings, 25 *Del. C.* § 7043(b) read: "*[a]t the meeting* the

---

[52]  *Id.*

[53]  (B49-50).

[54]  *See Tunnell Companies, L.P.*, 2014 WL 5173037, at *6 (holding the Appellant's failure to comply with 25 *Del. C.* § 7043(b) "prevents the Court from making a determination as to whether the rent increases ... are justified").

community owner shall, in good faith, disclose all of the material factors resulting in the decision to increase rent. The community owner ***shall disclose financial and other pertinent documents and information supporting the reasons for the rent increase***."[55] Recently, in *Tunnell Companies, L.P. v. Greenawalt*, this Court noted with approval an arbitrator's public policy explanation for the General Assembly's procedural requirements:

> The purposes of the requirement under the law for full disclosure of all reasons and documentary support for a rent increase are clear. First, full disclosure allows the home owners the opportunity to understand the Community Owner's reason for raising rents in excess of the CPI–U and therefore encourages [sic] agreement if the increase is justified. Second, this requirement is designed to level the playing field at arbitration should that remedy be necessary.[56]

The Court went on to say:

> [B]y requiring an informal meeting between the community owner and affected homeowners in which all the proverbial cards are on the table prior to seeking arbitration, and ultimately Superior Court review, the legislature believed the parties could settle their disputes without involving the courts, saving on judicial economy.[57]

In *Tunnell*, at the meeting, the community owner was in possession of a detailed

---

[55] 25 *Del. C.* § 7043(b) (emphasis mine).

[56] *Id.* at * 5 fn. 62.

[57] *Id.* at * 5 (Much like this case, the court held that the Appellant's failure to comply with the disclosure requirements of 25 *Del. C.* § 7043(b) prevented the court from addressing the merits of the case.).

report that contained factual analysis regarding how the proposed rent increase was determined. The community owner did not produce the report at the meeting, or provide any detailed reasoning for the rent increase, reasoning it was not necessary to do so until arbitration. In finding that the community's owner failure to provide such information violated the statutory requirements, the court explained:

> A reading of 25 Del. C. § 7043(b), makes it apparent that disclosure of all relevant material information, no matter how repetitious it may be in the future, is mandatory. In attempting this "drive by" on the affected homeowners and their respective HOAs, [the community owner] sought to increase rent with minimal resistence by keeping the other parties in the dark.

In the present case, the Appellant sought to justify the rent increase with the use of comparables. To do so, the statute requires a community owner to look to the market rent of other manufactured home communities with "similar facilities, services, amenities and management."[58] At the meeting, as justification for the rent increase, the Appellant's representative mentioned a number of other comminutes and compared their price – and his understanding of what the communities had to offer– with Bon Ayre, its price, and what it had to offer.[59] The Appellant's determinations were speculative and based off its representative's self-guided "tour of the communities[s]."[60] In terms of calculating market rent, the information

---

[58] 25 *Del. C.* § 7042(c)(7).

[59] (T53-64).

[60] (T70).

provided at the meeting was not grounded in any verifiable data. The representative did not know,[61] and therefore, did not provide, a detailed overview of the comparable communities. As such, the "good faith meeting" was irrelevant. The Bon Ayre residents had no way to accurately ascertain if the rent increase was justified based on the comparables presented. Accordingly, the residents had no choice but to exercised their statutory right to arbitration.

Interestingly, after the Appellee moved for arbitration, the Appellant commissioned a certified general appraiser to estimate the current market rents of Bon Ayre and a number of comparable manufactured homes communities.[62] The report was over 37 pages long and included detailed descriptions of each community and the surrounding area. The report included definitions, maps, pictures and a table with a summary that included side by side comparison of pertinent information such as monthly rent, age restrictions, the number of units, amenities, improvements, and the services which are included in the rent. Most importantly, the report explained the reconciliation process where the appraiser takes the relevant elements of comparison, assigns them a value, and uses them to calculate an appropriate market rent. Under the Act, this report is precisely the type of information that should be on hand prior

---

[61] At arbitration, the Appellant's representative was often unable to discuss the comparable communities' facilities, amenities, and management. (T71-83). The Appellant's representative did not know pertinent information such as the size of the club houses, whether access to the club house was included, the existence of community computers or wi-fi, or whether the communities provided an activities director.

[62] (B54-91).

to deciding to raise the rent above the CPI-U and it should be disclosed to the residents at the good faith meeting.

While this case differs from *Tunnell* in that the Appellant did not possess the report until after the meeting; the meeting was procedurally deficient under the statute for the same reason. If the Court were to find that the information, or lack thereof, provided by the Appellant in this case was sufficient to comply with the statutory mandates of 25 *Del. C.* § 7043(b), the entire meeting provision would be mere surplusage. That cannot be the case. Because the Appellant has failed to comply with the procedural requirements of 25 *Del. C.* § 7043(b), any rental increase above the CPI-U is denied.

## **CONCLUSION**

For the foregoing reasons, Appellant's request for a rent increase above the CPI-U is ***denied.***

IT IS SO ORDERED.

/s/ William L. Witham, Jr.
Resident Judge

WLW/dmh

22