# COURT OF CHANCERY
## OF THE
## STATE OF DELAWARE

ANDRE G. BOUCHARD
CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

Date Submitted: February 28, 2018
Date Decided: March 5, 2018

Kelly A. Green, Esquire
Smith, Katzenstein & Jenkins LLP
1000 West Street, Suite 1501
Wilmington, DE 19801

Howard and Roberta Feldman, *pro se*
Trustees for the YIDL Trust
13650 Marina Pointe Drive, #1205
Marina Del Rey, CA 90290

RE:  ***Benjamin Feldman v. YIDL Trust***
     Civil Action No. 2017-0253-AGB

Dear Counsel and Mr. and Mrs. Feldman:

This letter constitutes the court's decision on petitioner Benjamin Feldman's

motion for summary judgment under Court of Chancery Rule 56 for dissolution of

Royston, Inc. ("Royston" or the "Company") under 8 *Del. C.* § 273.[1]  For the reasons

explained below, I grant the motion and appoint a receiver to dissolve the Company.

---

[1] Because a party (Benjamin Feldman) and relevant non-parties (Howard, Roberta, and Andrew Feldman) share a surname, this decision refers to them by their first names.  No disrespect is intended.

## I.    Background[2]

Royston is a Delaware corporation that was formed on August 7, 1995, at the request of Andrew Feldman, the son of Howard and Roberta Feldman.[3]    The Company's only asset is a boat named M/V Nervous Wreck (the "Boat").[4]    On March 15, 2012, after Andrew's death, the YIDL Trust (the "Trust") was formed and became the record owner of 1,000 shares of stock in Royston, representing 100% of its outstanding stock.[5]    Howard and Roberta are Benjamin's grandparents and the trustees of the Trust.[6]

On January 6, 2016, the Trust transferred 500 Royston shares, representing 50% of its outstanding stock, to Benjamin.[7]    Minutes of a January 6, 2016 meeting of Royston's stockholders and its board of directors reflect that the Trust transferred these shares to Benjamin in consideration of various expenses Benjamin had

---

[2] The facts recited herein are based on the allegations of the Verified Petition for Dissolution (the "Petition"), YIDL's Answer, and the parties' submissions in connection with Benjamin's motion for summary judgment.  Cognizant of YIDL Trust's *pro se* status after its counsel withdrew, I treat assertions in its submissions as if presented by affidavit. *See Delaware Elevator, Inc. v. Williams*, 2011 WL 1005181, at *2 (Del. Ch. Mar. 16, 2011).

[3] Aff. of Benjamin Feldman ("Benjamin Aff.") Ex. A (Dkt. 20); Answer ¶¶ 2-3 (Dkt. 6).

[4] Answer ¶ 3.

[5] *Id.* at ¶¶ 4-5.

[6] *Id.* at ¶ 1.

[7] Benjamin Aff. Exs. D, E.

incurred in connection with the Boat,[8] which Benjamin asserts totaled $45,011.09.[9]

The Trust retained the remaining 50% of the Company's stock.[10]

Howard and Benjamin are Royston's only directors and officers.[11] After January 2016, Benjamin's relationship with Howard and Roberta deteriorated, as they have disagreed about the proper use of the Boat and the allocation of costs and expenses associated with ownership and maintenance of the Boat.[12]

On April 4, 2017, Benjamin filed a petition under 8 *Del. C.* § 273 to dissolve Royston and to appoint himself as a receiver to administer and wind up the affairs of the Company.[13] On June 20, 2017, the Trust responded to the petition and asserted that "Howard, not Benjamin, be appointed as receiver of Royston should the parties be unable to agree to a plan of dissolution."[14]

---

[8] *Id.* Ex. E.

[9] Second Aff. of Benjamin Feldman ¶ 4 & Ex. A (Dkt. 24).

[10] Benjamin Aff. Ex. B, C, E; Answer ¶ 1.

[11] *Id.* Ex. E.

[12] *Id.* Ex G, H; Answer ¶ 13; Letter from H. Feldman (Jan. 17, 2018) (Dkt. 22).

[13] Pet. ¶¶ 1, 20 (Dkt. 1).

[14] Answer ¶ 18.

On October 27, 2017, before any briefing or argument, the Trust's counsel filed a motion to withdraw, which the court granted on December 8, 2017.[15] The Trust has since proceeded in this action *pro se*.

On December 29, 2017, Benjamin filed a motion for summary judgment for dissolution of Royston.[16]  In a supporting affidavit, Benjamin attests that he and the Trust "have been unable to come to an agreement regarding the dissolution of Royston, Inc. and the disposal of [the Boat]."[17]  The motion requests the appointment of a Delaware attorney (Rebecca L. Butcher, Esq. of Landis Rath & Cobb LLP) as an independent receiver to oversee the dissolution of the Company, including the sale of the Boat, and proposes that the receiver use the services of Jeffrey Pielet, of J.P. Marine Consultants, Inc., to prepare the Boat for sale and to work with a local broker to sell the Boat.[18]  The motion also "requests that only costs incurred for capital improvements and repairs to the Boat be reimbursed."[19]

---

[15] Mot. to Withdraw ¶¶ 1-2 (Dkt. 11); Dkt. 18.

[16] Dkt. 20.

[17] Benjamin Aff. ¶ 3.

[18] Pet'r's Mot. for Summary Judgment ¶ 22 (Dkt. 20).

[19] *Id.* ¶ 25.

On January 17, 2018, Howard filed a letter on behalf of the Trust opposing the motion for summary judgment.[20] In its response, the Trust does not dispute that Benjamin and the Trust have been unable to agree on how to discontinue Royston or to dispose of the Boat. The Trust contends, however, that "there is a dispute about who are the true shareholders of . . . Royston [Inc.]."[21] The Trust further contends that, "even if the court finds that Benjamin is a rightful shareholder, the motion should be denied because there is a dispute over the costs and expenses of the parties relative to any proposed distribution."[22]

## II. Analysis

To succeed on a motion for summary judgment, the movant "must establish that no genuine issue of law or of fact exists and that he is entitled to judgment as a matter of law."[23] In determining whether this burden is met, the court must view the

---

[20] Dkt. 22.

[21] Letter from H. Feldman at 1 (Jan. 17, 2018).

[22] *Id.* Howard contends that he and Roberta have incurred approximately $50,000 in expenses concerning the Boat since January 2016. *Id.* at 3. Benjamin contends he has incurred approximately $33,000 in expenses concerning the Boat during the same period. Benjamin Aff. Ex. F.

[23] *Haley v. Talcott*, 864 A.2d 86, 93 (Del. Ch. 2004) (citing Ct. Ch. R. 56(c)).

facts in the light most favorable to the non-moving party.[24] I am mindful of the

Trust's *pro se* status and thus interpret its filings leniently.[25]

Section 273 of the Delaware General Corporation Law establishes a

mechanism for the dissolution of a corporation comprised of two 50% stockholders:

> (a) If the stockholders of a corporation of this State, having only 2 stockholders each of which own 50% of the stock therein, shall be engaged in the prosecution of a joint venture and if such stockholders shall be unable to agree upon the desirability of discontinuing such joint venture and disposing of the assets used in such venture, either stockholder may, unless otherwise provided in the certificate of incorporation of the corporation or in a written agreement between the stockholders, file with the Court of Chancery a petition stating that it desires to discontinue such joint venture and to dispose of the assets used in such venture in accordance with a plan to be agreed upon by both stockholders or that, if no such plan shall be agreed upon by both stockholders, the corporation be dissolved.

Unless both stockholders file with the court an agreed-upon plan of dissolution

within three months of the petition and that plan is executed within a year, "the Court

of Chancery may dissolve such corporation and may by appointment of 1 or more

trustees or receivers with all the powers and title of a trustee or receiver appointed

under § 279 of this title, administer and wind up its affairs."[26]

---

[24] *LaPoint v. AmerisourceBergen Corp.*, 970 A.2d 185, 191 (Del. 2009).

[25] *See Smith v. Christina Sch. Dist.*, 1996 WL 757282, at *1 (Del. Ch. Jan. 2, 1997).

[26] 8 *Del. C.* § 273(b).

"Section 273 essentially sets forth three pre-requisites for a judicial order of dissolution: 1) the corporation must have two 50% stockholders, 2) those stockholders must be engaged in a joint venture, and 3) they must be unable to agree upon whether to discontinue the business or how to dispose of its assets."[27]

"The purpose of the statute is to afford relief where the corporation's two equal shareholders are deadlocked and cannot agree upon whether the joint venture should be continued and how the corporation's assets should be disposed of."[28] "[W]hile Section 273 recognizes a power in this court to deny a petition that satisfies its minimum standards, such power should be sparingly exercised."[29] "Once the requirements of § 273 are met, the exercise of such discretion is limited to a determination of whether or not a bona fide inability to agree exists between the two shareholders."[30]

---

[27] *Haley*, 864 A.2d at 94.

[28] *In re Coffee Assocs., Inc.*, 1993 WL 512505, at *3 (Del. Ch. Dec. 3, 1993) (citation omitted).

[29] *In re Data Processing Consultants, Ltd.*, 1987 WL 25360, at *4 (Del. Ch. Nov. 25, 1987) (Allen, C.).

[30] *In re Arthur Treacher's Fish & Chips*, 1980 WL 268070, at *4 (Del. Ch. July 1, 1980); *see id.* at *3 (finding that dissolution "should not be judicially interfered with in the absence of a showing of bad faith or compensable injury to the other shareholder"); *Data Processing*, 1987 WL 25360, at *4 (explaining that bad faith means "bad faith in the seeking of a dissolution of the joint venture corporation and not to other claims or actions between those concerned").

In my opinion, the prerequisites for a judicial order of dissolution under Section 273 have been met here. Benjamin and the Trust indisputably have been engaged in a joint venture (owning the Boat) since January 2016 and, as noted above, there is no dispute that they have been unable to agree as to the continued operation of the Company or how to dispose of its sole asset. Although the Trust disputes Benjamin's ownership of 50% of Royston, I find for the reasons explained below that there are no genuine issues of fact as to his ownership.

In its opposition letter, the Trust argues that Benjamin "should not be recognized as a shareholder" because he "operated with premedi[t]ation in deception with the intent to defraud two senior citizens."[31] More specifically, the Trust contends that, in order to inherit a slip at the yacht club where the Company keeps the Boat, "Benjamin tricked [Howard and Roberta] [in]to signing over half of the corporation," but then, "within 10 months of receiving the shares, he demanded that we sell the boat and . . . give him half of the proceeds."[32]

---

[31] Letter from H. Feldman at 1 (Jan. 17, 2018).

[32] *Id.*; *see also* Letter from H. Feldman (Feb. 23, 2018) & Ex. A (Dkt. 37). The Trust's contention is at odds with Royston's corporate minutes, which state that Howard and Roberta transferred the stock to Benjamin in consideration for him having "incurred various expenses in connection with the Corporation's principal asset, M/V Nervous Wreck." Benjamin Aff. Ex. E.

It is apparent from the Trust's submissions that Howard and Roberta feel betrayed by their grandson's actions with regard to the Boat. The problem with the Trust's position, however, is that there is no genuine dispute of fact concerning Benjamin's ownership of 50% of the Company that would warrant denial of his motion for summary judgment.

To start, the Trust specifically admitted in its answer while represented by counsel that Benjamin is a 50% stockholder of Royston:

- "Respondent [the Trust] admits that it is a 50% stockholder of Royston and that Benjamin holds the other 50% interest in Royston."

- "[A]dmitted that Respondent transferred 50% ownership of Royston to Benjamin."

- "Admitted" that "[c]urrently, Benjamin and Respondent are each a 50% stockholder of Royston."[33]

"Voluntary and knowing concessions of fact made by a party during judicial proceedings (*e.g.*, statements contained in pleadings, stipulations, depositions, or testimony; responses to requests for admissions; counsel's statements to the court) are termed 'judicial admissions.'"[34] Judicial admissions "are traditionally

---

[33] Answer ¶¶ 1, 8, 9.

[34] *Merritt v. United Parcel Serv.*, 956 A.2d 1196, 1201 (Del. 2008) (citations omitted).

considered conclusive and binding both upon the party against whom they operate, and upon the court."[35] Although "Delaware courts, at their discretion, look to the underlying substance of a pro se litigant's filings rather than rejecting filings for formal defects and hold those pro se filings to a somewhat less stringent technical standard than those drafted by lawyers,"[36] the Trust was represented by counsel when it made these admissions. Accordingly, I hold the Trust to the unequivocal admissions it made in its answer concerning Benjamin's 50% ownership of the Company's stock.

Although further analysis is unnecessary, contemporaneous documents corroborate the Trust's multiple admissions that Benjamin is a legitimate 50% stockholder in Royston. Royston's stock ledger indicates that the Trust transferred 500 shares to Benjamin on January 6, 2016.[37] A stock certificate dated January 6, 2016, signed by Howard in his capacity as the Company's Secretary and President, reflects that Benjamin is the owner of 500 shares of Royston's stock.[38] And the minutes of a January 6, 2016 meeting of Royston's stockholders and its board of

---

[35] *Id*. at 1201-02 (citations omitted).

[36] *Sloan v. Segal*, 2008 WL 81513, at *7 (Del. Ch. Jan. 3, 2008) (Strine, V.C) (citations and internal quotation marks omitted).

[37] Benjamin Aff. Ex. B.

[38] *Id*. Ex. D.

directors, signed by Howard, Roberta, and Benjamin, indicate that Howard and Roberta transferred to Benjamin a 50% stake in Royston.[39]

Finally, a letter dated February 21, 2018 that *the Trust submitted* further confirms that Benjamin is the holder of 50% of the Company's stock.[40] The Trust contends that the letter, written by Thomas A. Widger, Esq., the attorney *Howard* engaged to effectuate the stock transfer to Benjamin, supports that Benjamin would only receive Royston's stock upon the deaths of Howard and Roberta.[41] In actuality, however, Widger's letter confirms that Howard engaged his firm to "transfer 50% ownership of the [Company] from your living trust to your grandson Benjamin *so that he would immediately become an equal co-owner* of the M/V Nervous Wreck."[42]

Based on the foregoing evidence of record, I conclude that there is no genuine dispute as to whether Benjamin holds 50% of Royston's stock. Accordingly, because Section 273's requirements have been met and there is no evidence that

---

[39] *Id*. Ex. E.

[40] Letter from H. Feldman (Feb. 23, 2018) Ex. A.

[41] Letter from H. Feldman (Feb. 23, 2018) & Ex. A.

[42] Letter from H. Feldman (Feb. 23, 2018) Ex. A (emphasis added). Widger's letter further explained that the 50% stake in Royston that the Trust retained would go to Benjamin upon the deaths of Howard and Roberta.

Benjamin filed the petition in bad faith,[43] the motion for summary judgment will be granted and a receiver shall be appointed to oversee the dissolution of Royston, the sale of the Boat, and the wind up of Royston's affairs.[44]

Accompanying this decision is an order that (1) accepts Benjamin's recommendation to appoint Ms. Butcher to serve as an independent receiver, (2) asks her to confirm her willingness to serve in that capacity within five business days, and (3) assuming she is willing to do so, requests that Ms. Butcher confer with the parties and submit to the court a proposed plan of dissolution within ten business days thereafter. Upon the sale of the Boat, the receiver will be expected to recommend a plan for reimbursing the parties for expenses associated with the Boat that they have incurred since January 6, 2016,[45] and that plan will be subject to the court's approval.

---

[43] As noted above, bad faith in the context of a Section 273 petition for dissolution means "bad faith in the seeking of a dissolution of the joint venture corporation and not to other claims or actions between those concerned." *Data Processing*, 1987 WL 25360, at *4.

[44] The Trust contends that summary judgment should be denied for the additional reason that "there is a dispute over the costs and expenses of the parties relative to any proposed distribution." Letter from H. Feldman at 1 (Jan. 17, 2018). Any disputes over the distribution of the proceeds from the sale of the Boat can be addressed in connection with the dissolution process and do not provide grounds for denying the motion for summary judgment.

[45] I selected this date because it marks the point at which Benjamin and the Trust became 50-50 owners of Royston. The receiver may consider the documentation the parties filed with the court in connection with the instant motion as well as any other documentation

### III.    Conclusion

For the reasons explained above, petitioner's motion for summary judgment

is granted.

**IT IS SO ORDERED.**

Sincerely,

*/s/ Andre G. Bouchard*

Chancellor

cc:    Rebecca L. Butcher, Esquire
AGB/gm

---

she deems reliable.  Because the sale of the Boston Whaler mentioned in the Trust's
January 17 response occurred in 2015, that issue is irrelevant to the dissolution process.
*See* Letter from H. Feldman at 2-3 (Jan. 17, 2018).